EDWARD NAFFKY, Respondent, *v.* NATHAN YOSOVITZ, Appellant.

(Submitted May 29, 1935; decided June 11, 1935.)

*Harold J. Adams* and *Percy R. Smith* for appellant. There was no evidence of negligence on the part of the defendant. (*Hammond* v. *Hammond*, 227 App. Div. 336; *Demjanik* v. *Kultau*, 242 App. Div. 255; *Burkes* v. *Lieberman*, 218 App. Div. 600; 245 N. Y. 579; *Brianzi* v. *Crane Co.*, 196 App. Div. 58; *White* v. *Lehigh Valley R. R. Co.*, 220 N. Y. 131; *Wicks* v. *Cowperthwait Co.*, 203 App. Div. 705; *Ruppert* v. *Brooklyn Heights R. R. Co.*, 154 N. Y. 90.)

*Harold J. Tillou* and *William K. Buscaglia* for respondent. There was ample evidence of negligence. (*Bennett* v. *Edward*, 239 App. Div. 157; *Bolton* v. *Madsen*, 205 App. Div. 180; *Clark* v. *Traver*, 205 App. Div. 206.)

CRANE, Ch. J. While the plaintiff was riding on a farm produce truck in the village of West Falls, township of East Aurora, New York, he was thrown out and injured. This action has been brought against the owner, driver of the farm wagon, claiming that he negligently drove over a bump in the road.

The facts are peculiar, in that the roadway was seen to crack and rise at or about the time the defendant was coming along. Lawrence Rehle, an employee of the State in the maintenance of the State highways, testified that there had been other blow-outs on this piece of road at West Falls. The road was constructed of brick, one of the old brick roads which occasionally rose with the heat. This witness testified: " Q. What caused it to rise? A. Heat."

An expert called by the plaintiff, G. S. Hallenbeck, testified: " Q. Are you thoroughly familiar with the construction of the ordinary glazed brick public highway, the regular highway brick roads? A. Yes, I think so.

" Q. Take a highway like that that isn't provided with expansion strips such as are used in the more modern

highway, what is the tendency on such a highway when it is subjected to very hot sun and weather conditions? * * * A. Expand."

Edward Nester, a toolmaker of Buffalo, drove through West Falls in the afternoon about two o'clock on this day of the accident, which was June 9, 1933. The road was smooth. When he came back about an hour and a quarter afterwards, he says, " I noticed a rise in the pavement. I should imagine about six inches at the beginning. Well, it started rising there. I imagine about an hour and a half until it attained its full height of a foot.

" Q. It finally got up a foot high? A. Yes.

" Q. It kept swelling up? A. Yes."

The wife of the blacksmith in West Falls, Catherine Fierle, saw the accident and testified as follows:

" Q. What did you notice at the time of the accident? Tell us what you saw? A. When I got near there, near the truck where this happened, the fellow just went up and right down straight on his head over onto the road. * * * We were there after the doctor came and they carried him over on the road. Someone spoke up and said, ' The road is rising.'

" Q. And it went on up considerably more before the afternoon was over? A. Yes. * * * It cracked just through the center after that and it didn't rise any more after it cracked.

" Q. Did it crack before Mr. Yosovitz got back? .A. It wasn't up yet when he got back. It was gradually coming up but not up high."

Much of this evidence was given by the defendant's witnesses but is not contradicted by the plaintiff, rather it is corroborated in a vital matter. The plaintiff, a young man out of work, was assisting for a day or two the defendant in his vegetable business delivering fruits and vegetables to various customers. The vehicle was a light one-ton truck with an ordinary platform, stake body, and canvas over the top. It was about 130 inches wheel

base, rather a long body. There was a cab in front for the driver and a tail-gate in the back. The defendant asked the boy to get in the cab as they drove towards West Falls, but as it was a hot day, he preferred to sit in the back of the wagon on a box, a foot or two from the tail-gate. Going through West Falls, the plaintiff describes the accident as follows: " I was sitting in the back of the truck that way (indicating), going along about 20 miles an hour. There was an awful jolt and the back end of the truck went up and threw me off the truck, threw me out the back end. It was a terrific jolt. Picked me up and threw me right out of the truck. I went out head first. * * * He [the defendant] didn't slow up any."

The testimony of the plaintiff, which fits in with the story told by the defendant and his witnesses, is this: The plaintiff did not notice any jolt to the wagon at all before the hind wheels went up, for he says on cross-examination: " Q. And all of a sudden you felt the rear end of the truck go up, didn't you? A. Well, I felt it come up.

" Q. Well, there was just one jolt, the one that threw you out? A. The one that threw me out, yes.

" Q. Well, I will ask you if there was any other jolt just before the one that threw you out or did you feel two or one, or just how many? A. Just the one.

" Q. And that was the one that came like a flash, just bing (illustrating), and you went out, and that is all there was to it? A. Yes."

On re-direct examination Naffky testified, " Q. Edward, can you state whether or not the front wheels went up before the hind wheels as it passed over that, or don't you know? A. I couldn't tell you that."

The defendant says that he was driving about fifteen miles an hour and found the road perfectly smooth and level; that all of a sudden he felt his hind wheels go up and jolt. " When I passed, the first wheels passed and then there was a bump.

"Q. Well, did you strike any bumps at all with your front wheels? A. No."

He went a short distance and then came back and found that the road had blown up or cracked in the middle and that it kept rising while he was there.

The plaintiff's case rests of course upon the failure of the defendant to notice dangers in the road and drive accordingly. He must show that the defendant failed to exercise reasonable and ordinary care in driving; that there was a dangerous condition which the defendant could or should have seen in the exercise of care. I think he has failed to do this. It appears that with the heat the bricks buckled or *blew;* that by the expansion they continued to rise until they reached an elevation of six inches to a foot. When did this happen? The bricks were in the process of rising, had not reached the full height after the accident. Was there a break or blow before the defendant reached the spot, and had it occurred so long before that the defendant should have seen the rise and guarded against it? As to this there can be not even a guess or a surmise. Evidence is totally lacking. There is nothing in the case to contradict the evidence of the witnesses as to the buckling and rising of the road at about the time of the accident, and there is no evidence to show that it had occurred before the defendant reached the spot. Neither is there any evidence to show that if the bricks had started to rise before the defendant came to the place it would have been possible for him in the exercise of ordinary care in driving to have seen or noticed the rise at a sufficient distance from it to avoid going over it.

This appears to be one of those accidents which occurs without anybody's fault amounting to negligence, and for which the loss unfortunately must rest where it falls. The law does not provide recovery for every accident. There is a large field of non-liability for injury. This case comes within that field.

The judgment of the Appellate Division and that of the Trial Term should be reversed, and the complaint dismissed, with costs in all courts.

LEHMAN, O'BRIEN, HUBBS, CROUCH, LOUGHRAN and FINCH, JJ., concur.

Judgments reversed, etc.